## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **JASON SCHAUMLEFFEL,** | : | **No. 2:17-cv-463** |
| **Plaintiff,** | : | **Judge George Smith** |
| | | **Magistrate Judge Kimberly Jolson** |
| **v.** | : | **MOTION OF DEFENDANT,** |
| | | **MARK K. NEAL, FOR** |
| **MUSKINGUM UNIVERSITY, et al.,** | : | **JUDGMENT ON THE** |
| | | **PLEADINGS** |
| **Defendants.** | | |

Pursuant to Fed. R. Civ. P. 12(c), Defendant, Mark K. Neal, moves this Court for judgment on the pleadings as to Plaintiff's claims against him.  Plaintiff can prove no set of facts entitling him to relief as to those claims, and Mark K. Neal is entitled to judgment as a matter of law.  This motion is supported by the attached memorandum, which is incorporated by reference.

Respectfully submitted,

*/s/ Bartholomew T. Freeze*
Bartholomew T. Freeze (0086980)
FREUND, FREEZE & ARNOLD
Capitol Square Office Building
65 E. State Street, Suite 800
Columbus, OH  43215-4247
(614) 827-7300; (614) 827-7303 (fax)
bfreeze@ffalaw.com
*Counsel for Defendant, Mark K. Neal*

## **TABLE OF CONTENTS**

I. INTRODUCTION & SUMMARY ........................................................................3

II. STATEMENT OF FACTS.................................................................................4

III. PROCEDURAL HISTORY...............................................................................14

IV. STANDARD FOR JUDGMENT ON THE PLEADINGS ...................................15

V. LAW & ANALYSIS.........................................................................................16

VI. CONCLUSION..................................................................................................32

CERTIFICATE OF SERVICE ................................................................................33

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

<u>**MEMORANDUM IN SUPPORT**</u>

**I.     INTRODUCTION & SUMMARY**

Plaintiff, an elected public official, has been accused of—and found responsible for—sexual misconduct against two young women.  One young woman states Plaintiff sexually harassed and stalked her.  The other states Plaintiff sexually assaulted her.  Muskingum University ("Muskingum"), where Plaintiff and the two young women attended college, investigated the accusations of misconduct, held a hearing, and determined Plaintiff was responsible for sexual harassment and non-consensual sexual intercourse.  Plaintiff was expelled from Muskingum and banned from the university.

Plaintiff, for all relevant times, has also been an elected member of the Tri-Valley Local School District Board of Education (the "Board" or "District").  Information was anonymously shared with the Board concerning Muskingum's determination that Plaintiff was responsible for sexual misconduct against two young women, as well as Plaintiff's expulsion/ban from the university.  The Board—and its superintendent Mark K. Neal ("Superintendent Neal")—thereafter sought to obtain information concerning the matter.  Plaintiff, ultimately, took issue with the fact that the Board, and specifically Superintendent Neal, refused to be complicit in his attempt to cover up the matter.  Plaintiff, accordingly, filed this lawsuit against, *inter alia*, Superintendent Neal, alleging claims for (1) defamation, (2) false light invasion of privacy, and (3) publication of private facts.

Superintendent Neal now moves for judgment on the pleadings as to all of Plaintiff's claims.  *First*, Superintendent Neal is entitled to political subdivision employee immunity.  He, at all relevant times, acted in good faith and within the scope of his employment and official responsibilities.

*Second*, Superintendent Neal is entitled to judgment on the pleadings as to Plaintiff's defamation claim. His statements are true or, at a minimum, protected speech. Qualified privilege also protects these statements. Moreover, Plaintiff, as an elected public official, has failed to meet the high threshold of showing Superintendent Neal acted with "actual malice" in making any statements. Indeed, Plaintiff fails to actually allege what Superintendent Neal said to defame him. Plaintiff, instead, appears to base his claims against Superintendent Neal on a purported FERPA violation by Muskingum. But, this quasi-FERPA claim fails because, *inter alia*, there is no private cause of action under FERPA.

*Third*, Superintendent Neal is entitled to judgment on the pleadings as to Plaintiff's claim for false light invasion of privacy for the same reasons he is entitled to judgment as to Plaintiff's defamation claim.

*Fourth*, Superintendent Neal is entitled to judgment on the pleadings as to Plaintiff's claim for "publication of private facts" because when an elected public official, such as Plaintiff, is accused of—and found responsible for—sexual misconduct against two young women, this is not a "private" matter. Rather, it is a matter of public concern.

## II.    STATEMENT OF FACTS

Plaintiff is a former student at Muskingum University. Doc. 1, ¶18. Muskingum determined he engaged in non-consensual sexual misconduct towards two female Muskingum students in 2016–17, resulting in his expulsion from the university and ban from its campus. See id. Plaintiff, for all relevant times, has been an elected member of the Board. Id., ¶5. He began his term in January 2016; his term expires January 31, 2019. Doc. 1-47.

- 4 -

### A.     <u>Macey Zambori states Plaintiff sexually harassed and stalked her.</u>

Macey Zambori, in Fall 2015, was a college freshman at Muskingum University. <u>Doc. 45</u>, p. 24, ¶8. That year, Ms. Zambori met Plaintiff through Muskingum's Student Senate; Plaintiff, at that time, served as the Senate's Executive Vice President. <u>Id.</u>, p. 24, ¶9; <u>Doc. 55</u> ¶9. Ms. Zambori, on or about **February 7, 2016**, agreed to meet Plaintiff socially. <u>Doc. 45, p. 24</u> ¶12; <u>Doc. 55</u>, ¶12. Ms. Zambori states, over the following two days, Plaintiff engaged in "creepy and persistent sexually aggressive, perverted, and harassing behavior that scare[d] and disturb[ed]" her. <u>Doc 45</u>, p. 24, Heading B.

Ms. Zambori states Plaintiff's actions towards her made her "feel[] unsafe in her own dorm room and so disturbed that she obtained a no-contact order." <u>Doc 45</u>, p. 1. Plaintiff, for example, "continued to attempt to touch Ms. Zambori underneath her clothes against her instruction." <u>Id.</u>, p. 26, ¶21. He touched her below the waist despite her repeatedly telling him not to. <u>Doc. 45</u>, pp. 25–27, ¶¶16–18, 20, 21, 29–32. Plaintiff "repeatedly begged" Ms. Zambori to have sexual intercourse with him. <u>Doc. 45</u>, p. 25, ¶14. And he, after Ms. Zambori refused to have sexual intercourse with him, placed his belt around Ms. Zambori's neck; within inches of her face, he stated "I'm in control." <u>Id.</u>, ¶36.

Ms. Zambori states Plaintiff further pressured her to permit him to take nude photographs of her. <u>Id.</u> p. 28, ¶¶33–34, 37, 38. Ms. Zambori states Plaintiff, at the conclusion of their final in-person encounter, stated "by virtue of his job with Muskingum University's Computer & Network Services, his keycard worked such that he could access Ms. Zambori's dorm building." <u>Id.</u>, p. 28, ¶41. Ms. Zambori was scared because [Plaintiff's] aggressive, persistent, highly sexualized, and perverse behavior." <u>Id.</u>

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

Ms. Zambori states Plaintiff then began to stalk her. Id., p. 29, Heading C & ¶43. He sent her sexual messages via text/Snapchat, continually sought to determine where she was, and became upset when she did not respond immediately to his communications. Id. Ms. Zambori, after providing a statement to Muskingum's Title IX Coordinator about Plaintiff's conduct, was granted a no-contact order on **February 9, 2016**, barring Plaintiff from contacting her. Id. pp. 29–30, ¶¶50–51; Doc 55, ¶51. Ms. Zambori, in **January 2017**, submitted a formal complaint to Muskingum regarding Plaintiff's misconduct. Doc. 45, p. 30, ¶¶52–53.)

### B. Mackenzie Dicekerson states Plaintiff sexually assaulted her.

Mackenzie Dickerson, in Fall 2016, was a college freshman at Muskingum. Doc. 46, p. 55, ¶8. Ms. Dickerson, during her first semester at Muskingum, became a member of the Muskingum Programming Board ("MPB"). Id., p. 55, ¶9.

Ms. Dickerson, during that same semester, met Plaintiff through a dating phone app. Doc. 1, ¶26; Doc. 46, p. 55, ¶10. They first met, in person, in late November 2016. Doc. 46, p. 56, ¶17. Plaintiff, through the app, began sending sexually explicit messages to Ms. Dickerson. Doc. 1, ¶¶29–30; Doc. 51, ¶12. They first met, in person, in late November 2016. Doc. 1, ¶32; Doc. 46, ¶17. Plaintiff—as President of the Student Senate by that time—also stressed to Ms. Dickerson his importance on campus and that he could manipulate the MPB's budget. Doc. 46, p. 56, ¶¶13, 14, 19. Plaintiff demanded Ms. Dickerson send him nude photographs; Ms. Dickerson eventually felt compelled to do so due to her fear that Plaintiff would defund the MPB if she didn't. Id., p. 57, ¶¶25–26.

Plaintiff and Ms. Dickerson first met, in person, in late November 2016. Doc. 46, p. 56, ¶17. Their second in-person meeting occurred a few days later when Plaintiff—intoxicated and unannounced—showed up at Ms. Dickerson's dorm room. Id., p. 57, ¶27. Plaintiff, after trying

to drag Ms. Dickerson to a nearby stairwell to kiss her, followed her back to her dorm room and would not leave. Id., pp. 57–58, ¶¶28–33.  The next day, Plaintiff again appeared at her dorm room uninvited and refused to leave.  Id., p. 58, ¶¶36–41.  Plaintiff then coerced her into non-consensual sexual touching through threats and physical force and threat of force. Id., p. 59, ¶¶42–48.

Their final in-person meeting included Plaintiff driving Ms. Dickerson to the New Concord Reservoir.  Doc. 1 ¶¶47–50; Doc. 46, pp. 61–62, ¶¶63–74.  Ms. Dickerson did not want to go the reservoir with Plaintiff, but she was too scared to resist; Plaintiff had locked his car doors and taken away Ms. Dickerson's cell phone.  Doc. 46, p. 62, ¶¶74–81.  Plaintiff then engaged in sexual intercourse with Ms. Dickerson, without her consent and against her will, in the backseat of his car.  Id., pp. 62–63, ¶¶84–98.  Ms. Dickerson subsequently went to the hospital where a rape kit was done.  Id., p. 64, ¶¶104–13.

Ms. Dickerson experienced emotional strain promptly after Plaintiff's actions, and lost motivation to do well in school and losing weight.  Id., pp. 60–61, ¶¶60–62.  She withdrew from Muskingum and has not enrolled in any other college. Id., p. 65, ¶¶117–21.

### C.  Muskingum University determined Plaintiff was responsible for sexual misconduct against Macey Zambori and Mackenzie Dickerson.

On **January 16, 2017**, Muskingum's Title IX Coordinator, Amber Zifzal Farley ("Coordinator Farley"), sent Plaintiff a letter notifying him that Muskingum was investigating an allegation he engaged in "acts of serious misconduct," specifically non-consensual sexual intercourse.  Doc 1-27.  The letter directed him to meet with Muskingum Title IX investigators Valerie Smith ("Investigator Smith") and Beth Fox ("Investigator Fox") for an interview.  Doc. 1, ¶158; Doc. 1-27.  On **January 25, 2017**, Investigators Smith and Fox interviewed Plaintiff. Doc. 1 ¶¶160–67; Doc. 44, ¶¶67–71).

FREUND, FREEZE & ARNOLD
A Legal Professional Association

Investigators Smith and Fox, on **February 22, 2017**, completed and submitted their investigation report (the "Report") to Coordinator Farley.  Doc. 1 ¶¶160–67; Doc. 1-35; Doc 44, ¶¶67–71.  The Report stated Muskingum's investigation originally pertained only to allegations of "Non-Consensual Sexual Intercourse," but had also resulted in the additional alleged violation of "Sexual Harassment."  Doc. 1-35, p. 1.  Muskingum's Student Conduct Code defines those violations as follows:

- Sexual Harassment:

  - Sexual Harassment is:

    - Unwelcome, gender-based verbal or physical conduct that is,

    - Sufficiently severe, persistent or pervasive that it,

    - Unreasonably interferes with, denies or limits someone's ability to participate in or benefit from the University's educational program and/or activities, and is

    - Based on power differentials (quid pro quo), the creation of a hostile environment, or retaliation.

  - Examples of "Sexual Harassment" include: an attempt to coerce an unwilling person into a sexual relationship; to repeatedly subject a person to egregious, unwelcome sexual attention; to punish a refusal to comply with a sexual based request; to condition a benefit on submitting to sexual advances; sexual violence; intimate partner violence, stalking; gender-based bullying.

- Non-Consensual Sexual Intercourse

  - Non-consensual sexual intercourse is:

    - any sexual intercourse

    - however slight,

    - with any object,

    - by a person upon another person,

- 8 -

- that is without consent and/or by force

o Intercourse includes, but may not be limited to: vaginal penetration by a penis, object, tongue or finger, anal penetration by a penis, object, tongue, or finger, and oral copulation (mouth to genital contact or genital to mouth contact), no matter how slight the penetration or contact.

Id., p. 2; Doc. 1-17, p. 61.

The Report then describes, in great detail, Plaintiff's interactions with Ms. Zambori and Ms. Dickerson.  Doc. 1-35, pp. 2–10.  Due to its length, the Report's description of those interactions is not reproduced herein.  See id.  In summary, Plaintiff claimed his sexual interactions with Ms. Zambori and Dickerson were consensual.  See generally id.  Both Ms. Zambori and Ms. Dickerson stated their respective sexual interactions with Plaintiff were *not* consensual.  See generally id.  They both stated they were afraid of Plaintiff.  See generally id.

Investigators Smith and Fox determined, based on their investigation, that Plaintiff's account of his interactions with Defendants Zambori and Dickerson was *not* credible; the Report lists several discrepancies/inconsistencies in Plaintiff's account of events.  See id., pp. 10–12.  The Report further described the similarities between the Ms. Zambori's and Ms. Dickerson's accounts of their respective interactions with Plaintiff, as follows:

The two complainants, both first-year women living in Thomas Hall at the time of the incidents, did not know each other prior to this investigation. Yet their descriptions of what they experienced and of [Plaintiff] as a sexual partner are very similar.

They both speak of being scared and intimidated, that they did not want to send sexual pictures and that he persisted, that they said no repeatedly to what he asked to do sexually and that he kept pushing and they both felt he was coercive.  They both felt that he used his position of perceived power on campus to get what he wanted, they felt intimidated about doing anything against the President of Student Senate who was one of the youngest to be elected to a school board and whose father was a police officer, facts they felt like he made sure they knew.  The two women describe him as controlling and domineering, the use of a belt with [Ms. Zambori] and pulling [Ms. Dickerson's] hair.  Both women vividly

- 9 -

remember these acts but [Plaintiff] does not.  They both share that messages from him were possessive and persistent.  ***

**Both women believe he is a threat to other women on campus and they do not want any other women to have to go through what they experienced.**

(emphasis added).  On **March 1, 2017**, Plaintiff met with Director Farley to receive a copy of the Report.  Doc. 1, ¶¶168–69; Doc. 44 ¶¶72–73.

The Muskingum Community Standards Board, on **March 14, 2017**, held a hearing and determined Plaintiff was responsible for non-consensual sexual intercourse and sexual harassment.  Doc. 1, ¶180; Doc. 1-38.  Plaintiff was expelled from Muskingum and banned from its campus.  Id., p. 2.  The findings letter, dated **March 15, 2017**, stated:

> In regard to the charge of **Sexual Harassment**, the Board felt that the ongoing threatening text messages to both complainants were in direct violation of this policy.
>
> The Board found you responsible for the charge of **Non-Consensual Sexual Intercourse** because they did not believe consent was obtained through words or actions with either complainant.
>
> The Board felt the outcome of expulsion was appropriate given that they found a pattern of behavior between the reports as well as the severity and level of impact that these behaviors had on others.

Doc. 1-38, p. 2 (emphasis added).

Plaintiff, on **March 18, 2017**, filed an appeal as to his sanction of expulsion.  Doc. 1 ¶189.  He did not, however, appeal Muskingum's findings that he was responsible for sexual harassment and non-consensual sexual intercourse.  Doc. 1, ¶189.  Muskingum, on **March 21, 2017**, denied Plaintiff's appeal and affirmed his expulsion/ban from the university.  Id. ¶190; Doc. #1-41.

- 10 -

**D.** **The fact that Plaintiff, an elected public official, was found responsible for sexual misconduct is a matter of public concern in the Tri-Valley Local School District.**

Plaintiff, during his interactions with Ms. Zambori and Ms. Dickerson and at the time of Muskingum's decision finding him responsible for sexual harassment and non-consensual sexual intercourse, has been an elected member of the Board. Following Plaintiff's expulsion/ban from Muskingum, Board members received an anonymous letter, on or about **March 22, 2017**, stating Plaintiff had been expelled from Muskingum and banned from campus for incidents involving sexual misconduct:

> Tri-Valley Board of Education Member,
>
> This letter is in regards to current board member Mr. Jason Schaumleffel [Plaintiff].
>
> Information has surfaced that [Plaintiff] has been expelled from Muskingum University and banned from campus for incidents involving sexual misconduct. I have relationships with current students and faculty at Muskingum University who have asked not to be identified, but felt that the Tri-Valley Board of Education should be made aware of this situation. I would suggest you reach out to Muskingum University for all information on this issue.
>
> **This is of grave concern as a resident and parent of children in the Tri-Valley School District.**
>
> I would hope that the Board of Education investigate and take swift action to remove [Plaintiff] from contact with our student [sic.] and our campuses and follow suite [sic.] with the actions of Muskingum University. I would expect to see some action on this immediately.

Doc. 1-46, p. 4 (emphasis added); see Doc. 32 ¶29;

Thereafter, on **March 27, 2017**, the Board's superintendent, Mark Neal ("Superintendent Neal")—while working as the Board's employee and agent—sent public records requests to both the Muskingum University Police Department and the Muskingum University Dean of Students,

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

seeking records regarding the arrest, expulsion/removal, investigation, or charges of sexual assault by Plaintiff. Doc. 1, ¶205; Doc. 1-43;  Doc. 32, ¶23.

The following day, on **March 28, 2017**, the Board's treasurer, Ryan Smith ("Treasurer Smith"), issued a public notice that the Board would hold a special meeting on March 30, 2017, to consider "the discipline of a public official, or the investigation of charges or complaints against a public official pursuant to ORC 121.22." Doc. 1, ¶206; Doc. 1-44; Doc 32, ¶24). The Board, after the special meeting concluded, issued a public statement in which it announced that the focus of the special meeting was information received "from an anonymous source regarding [Plaintiff], one of the members of the Board of Education." Doc. 1, ¶207; Doc. 1-45. The Board stated that it was "in the process of investigating the allegations set forth in the letter to the best of its ability." Doc. 1-45.

In a letter dated **March 30, 2017**, Muskingum's Vice President of Student Affairs, Janet Heeter Bass, denied the public records request for public records related to Muskingum's determination that Plaintiff had engaged in sexual misconduct. See Doc. 1-46, p. 7).  She stated Muskingum would, however, produce the records if Plaintiff executed a release. Id., p. 5.

Superintendent Neal, on **March 31, 2017**, forwarded VP Bass's e-mail to members of the Board (including Plaintiff) as well as certain District administrative personnel, asking Plaintiff to sign a release to allow Muskingum to provide records pertaining to Plaintiff's disciplinary history. See id., p. 5.  Superintendent Neal, in his e-mail, wrote that "[i]n my opinion, It is time to provide the records or resign from the Board of Education." Id., p. 5.  This email thread was subsequently produced in response to a public records request from a local media publication, the Zanesville Times Reporter. Doc. 32, ¶28; see Doc. 1-46, p. 16.

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

Superintendent Neal, on **April 21, 2017**, sent a follow-up e-mail to Board members (including Plaintiff) and certain District administrative personnel, stating Plaintiff "has not signed a release of his information from Muskingum University as we requested." Doc. 1-48, p. 2. Superintendent Neal, in that e-mail, described as a "scandal" Plaintiff's "two incidents of sexual misconduct," expulsion/ban from Muskingum, and subsequent refusal to be honest about the situation with constituents at a public Board meeting. Doc. 1-48, p. 2. He opined that Plaintiff's actions constituted "malfeasance" and that Ms. Zambori and Dickerson—not Plaintiff—were the victims in the situation. Id.

The Board, on or about **May 18, 2017**, issued a media release stating that, while Muskingum had refused to release the details pertaining to the investigation without Plaintiff's consent (which was not given), the Board had been able to determine Plaintiff was expelled and banned from Muskingum for Title IX violations (sexual misconduct). Doc. 1-49. The release further stated that the Board had twice formally asked Plaintiff to resign, but he has refused to do so and has likewise been uncooperative and unresponsive in responding to public inquiry concerning his expulsion/ban from Muskingum. Id.

The Board, at each of its sixteen regular public meetings since it became aware of Plaintiff's expulsion/ban from Muskingum for sexual misconduct, has voted for Plaintiff to resign from his position on the Board. See District Board Meeting Minutes (2017: Apr. 6, May 11, June 22, July 13, Aug. 10, Sept. 14, Oct. 11, Nov. 8, Dec. 11; and 2018: Jan. 11; Feb. 8 , Mar. 8, Apr. 12, May 17, June 28, July 12)[1]. Each of these votes has been unanimous in favor of Plaintiff's resignation; most of the votes have been 4-0 with Plaintiff abstaining, but Plaintiff has voted twice in favor of *his own* resignation (on Apr. 6, 2017 and Feb. 8, 2018) despite not

---

[1]    Pursuant to Fed. R. Evid. 201, Superintendent Neal requests this Court take judicial notice of the Board's meeting minutes, which are publicly available and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

actually resigning.  See id.  Plaintiff has acknowledged that his expulsion/ban from Muskingum for sexual misconduct is a matter of public concern.  See Doc. 1, ¶215.  It was discovered, earlier this year, that Plaintiff—while serving as a member of the Board—has been Snapchatting inappropriate messages to a female high school student in the District.[2]  Doc. 45, p. 1, n.1.

## III.    PROCEDURAL HISTORY

Plaintiff, on **May 29, 2017**, filed this lawsuit against Muskingum, Ms. Zambori, Ms. Dickerson, and Superintendent Neal.  Doc. 1.

Plaintiff, against Superintendent Neal, alleged defamation (Counts 16 & 17), false light invasion of privacy (Count 18), and publication of private facts (Count 19).  Id., ¶¶335–71.  Superintendent Neal, on **August 21, 2017**, filed his Answer to Plaintiff's Complaint, denying liability and setting forth affirmative defenses.  Doc. 32.

Muskingum, Ms. Zambori, and Ms. Dickerson, on **March 20, 2018**, each filed an Answer to Plaintiff's Complaint, denying liability and setting forth affirmative defenses.  Doc. 44, 45, 46.  Ms. Zambori and Ms. Dickerson also filed counterclaims against Plaintiff.  Ms. Zambori filed claims against Plaintiff for abuse of process and intentional infliction of emotional distress.  Doc. 45, pp. 22–34.  Ms. Dickerson filed claims against Plaintiff for battery/sexual assault, assault, false imprisonment, intentional infliction of emotional distress, and sexual harassment in violation of Ohio Rev. Code §4112.02.  Doc. 46, pp. 54–70.  Plaintiff filed an Answer to Ms. Dickerson's and Zambori's counterclaims, respectively, on **April 30** and **June 5, 2018**.

The pleadings are closed.  The deadline to move to amend the pleadings or join additional parties expired on **July 28, 2018**.  See Doc. 53, p. 2.  Superintendent Neal now moves for judgment on the pleadings.

---

[2]    The high school student authorized disclosure of the Snapchats, with redaction of her username.

- 14 -

## IV.    STANDARD FOR JUDGMENT ON THE PLEADINGS

After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.  Fed. R. Civ. P. 12(c).  A district court reviews a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, using the same standard as applies to a review of a motion to dismiss under Rule 12(b)(6).  Jackson v. Professional Radiology Inc., 864 F.3d 463, 465–66 (6th Cir. 2017).

"The district court must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief."  United States ex rel. Sheldon v. Kettering Health Network, 816 F.3d 399, 407 (6th Cir. 2016).  However, "a legal conclusion couched as a factual allegation" need not be accepted as true.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, a plaintiff's obligation to provide the "grounds" for the claimed entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id.  The factual allegations must "raise a right to relief above the speculative level."  Id.  The complaint must state a claim that is plausible on its face, i.e., the court must be able to draw a "reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).

- 15 -

In deciding a motion for judgment on the pleadings, a court may consider exhibits attached to the pleadings, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion, so long as they are referred to in the complaint and are central to the claims contained therein. <u>Gavitt v. Born</u>, 835 F.3d 623, 640 (6th Cir. 2016); see also <u>Fed. R. Civ. P. 10(c)</u> ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). "A federal court sitting in diversity must apply the law of the highest state court if the court has ruled on the matter in dispute; otherwise, the court may rely on case law from lower state courts." <u>Henry v. Chesapeake Appalachia, L.L.C.</u>, 739 F.3d 909, 912 (6th Cir. 2014).

## V. LAW & ANALYSIS

### A. <u>Superintendent Neal is entitled to political subdivision employee immunity.</u>

Ohio Revised Code §2744.03(A)(6) provides, in pertinent part, that a political subdivision employee is immune from civil liability, absent particular enumerated exceptions:

> **(A)** In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
>
> **(6)** *** [T]he employee is immune from liability unless one of the following applies:
>
>> **(a)** The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>>
>> **(b)** The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>>
>> **(c)** Civil liability is expressly imposed upon the employee by a section of the Revised Code. ***

- 16 -

See also <u>Kropf v. Vermilion Bd. of Educ.</u>, 6th Dist. No. 46303, 1986 Ohio App. LEXIS 7795

(Aug. 8, 1986) (superintendents are public officials and cannot be held personally liable unless it

can be demonstrated that they are not entitled to a qualified good faith immunity).

     **Here**, Superintendent Neal is entitled to the general grant of immunity set forth at Ohio

Rev. Code §2744.03(A)(6). It is undisputed Superintendent Neal, as an employee of the Tri-

Valley Local School District, comes within the general scope of protection provided to political

subdivision employees. None of the three exceptions to political subdivision immunity applies

to Plaintiff's claims against Superintendent Neal. See <u>Ohio Rev. Code §2744.03(A)(6)(a)–(c)</u>.

The following sections address, in turn, each of these exceptions.

       1.    **Superintendent Neal, as to all relevant actions, acted within the course and scope of his employment and official responsibilities as the Board's superintendent.**

     Ohio Rev. Code Chapter 2744 does not define the type of acts that fall "manifestly

outside the scope of employment or official responsibilities" for the purposes of abrogating

political subdivision employee immunity. Ohio courts, however, have generally drawn from

agency-law principles to hold that "conduct is within the scope of employment if it is initiated, in

part, to further or promote the master's business." <u>Martin v. Cent. Ohio Transit Auth.</u>, 70 Ohio

App.3d 83, 92–93 (1990); see <u>Chesher v. Neyer</u>, 477 F.3d 784, 797 (6th Cir. 2007). Moreover,

"[t]he issuance of a press release by government officials is action under Ohio Rev. Code

§2744.03(A)(6)(a) as within 'the scope of the employee's employment or official

responsibilities.'" <u>Brothers v. Cty. of Summit</u>, No. 5:03 CV 1002, 2007 U.S. Dist. LEXIS

38468, at *100–01 (N.D. Ohio May 25, 2007).

     "An employee's wrongful act, even if it is unnecessary, unjustified, excessive or

improper, does not automatically take the act manifestly outside the scope of employment."

Jackson v. McDonald, 144 Ohio App. 3d 301, 306 (2001) "[I]t is only where the acts of the state employees are motivated by actual malice or other situations giving rise to punitive damages that their conduct may be outside the scope of their state employment."  Id. at 307 (brackets omitted).

**Here**, Superintendent Neal, for all relevant actions, acted within the course and scope of his employment and official responsibilities as the Board's superintendent.  Plaintiff, an elected member of the Board, was found responsible for sexual harassment and non-consensual sexual intercourse.  Board members were notified of this determination, as well as Plaintiff's expulsion and ban from Muskingum.  Superintendent Neal—subsequently and while acting in the course and scope of his employment as the Board's superintendent—sought to collect information, both from Plaintiff and Muskingum, concerning these accusations and determinations.  The Board itself has voted 4-0 (with Plaintiff abstaining) to approve a resolution stating "Superintendent Neal's actions taken with respect to Mr. Schaumleffel were in his official capacity and within the scope of his duties as Superintendent of the Tri-Valley Local School District."  Board Meeting Minutes, Resolution #13-211, (June 28, 2018).

Thus, the Board (Superintendent Neal's employer) has expressly acknowledged Superintendent Neal was working in the course and scope of his employment and official responsibilities as the Board's Superintendent in regards to actions taken with respect to Plaintiff.  Superintendent Neal himself has acknowledged the same.  Plaintiff, on the other hand, *alleges*—in an attempt to circumvent Superintendent Neal's immunity—that Superintendent Neal took actions outside the course and scope of his employment and official responsibilities as the Board's Superintendent.  He fails, however, to set forth the actual "grounds" for his claim; instead, he provides only "labels and conclusions" in his desire to defeat the immunity to which Superintendent Neal is entitled.  See Twombly, 550 U.S. at 555.

- 18 -

      **2.**      **Superintendent Neal did not act with malice, in bad faith, or in a wanton or reckless manner.**

The immunity exception set forth at R.C. 2744.03(A)(6)*(b)* differs from subpart *(a)* in that it explicitly focuses on the employee's state of mind rather than the employee-employer relationship. Chesher v. Neyer, 477 F.3d 784, 796–97 (6th Cir. 2007). That provision examines whether acts or omissions were committed "with malicious purpose, in bad faith, or in a wanton or reckless manner."

"'Malice' is the willful and intentional design to injure or harm another, usually seriously, through conduct that is unlawful or unjustified." Otero v. Wood, 316 F. Supp. 2d 612, 629 (S.D. Ohio 2004). "'Bad faith' involves a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another." DiLuzio v. Village of Yorkville, 796 F.3d 604, 612 (6th Cir. 2015) (quoting Cook v. Cincinnati, 103 Ohio App.3d 80, 90–91 (1995)). Wanton and reckless conduct is defined as "perversely disregarding a known risk, or acting or intentionally failing to act in contravention of a duty, knowing or having reason to know of facts which would lead a reasonable person to realize such conduct creates an unreasonable risk of harm substantially greater than the risk necessary to make the conduct negligent." Chesher, 477 F.3d at 796–97 (quoting Webb v. Edwards, 165 Ohio App.3d 158, 166 (2005)).

**Here**, Superintendent Neal did not act with malice, in bad faith, or in a wanton or reckless manner. Plaintiff, again, attempts to abrogate Superintendent Neal's immunity by *alleging* that he did. But, Plaintiff, again, fails to set forth the actual "grounds" for his claim; instead, he provides only "labels and conclusions." See Twombly, 550 U.S. at 555. Plaintiff takes issue with public statements issued by the Board (of which Plaintiff is a member). These statements are true, and—at a minimum—protected opinions, but in any case it remains the

- 19 -

Board, not Superintendent Neal, who made these statements.  Likewise, Plaintiff complains that Treasurer Smith issued a notice of a special meeting, but such notice is statutorily required.  See Ohio Rev. Code §121.22(F), 3313.16.  Furthermore, the District has released information to media outlets, but only in response to public records requests and as required by Ohio law.  See Ohio Rev. Code §149.43.

To the extent Plaintiff purports that Muskingum violated FERPA, that is not a proper claim in this lawsuit and especially not against Superintendent Neal.  To start, there is no private right of action under FERPA.  See, e.g., Henry v. Ohio Victims of Crime Compensation Program, No. 2:07-cv-0052, 2007 U.S. Dist. LEXIS 14508 (S.D. Ohio Feb. 28, 2007) ("Congress neither expressly nor impliedly provided for any private rights of action to enforce HIPAA.").  Furthermore, FERPA permits institutions of higher education—such as Muskingum—to disclose the final results of any disciplinary proceeding regarding crimes of violence and nonforcible sex offenses if the institution determines, as a result of that disciplinary proceeding, that the student committed a violation of the institution's rules or policies with respect such crime or offense.  20 U.S.C. §1232g(b)(6)(B),(C).  This includes the name of the student, the violation committed, and any sanction imposed by the institution on that student.  See also 34 C.F.R. 99.31(a)(14); 34 C.F.R. 99.39.  There is no redisclosure prohibition on this information.  65 FR 41852, 41861 (July 6, 2000).  The U.S. Department of Education, moreover, issued commentary on this provision stating that, when educational institutions disclose information under this provision, "We do not believe that a school can be found liable on a defamation claim for this type of determination."  Id.

Plaintiff, ultimately, appears to complain that the Board, and Superintendent Neal specifically, did not assist him in covering up the findings of sexual misconduct against him.

FREUND, FREEZE & ARNOLD
A Legal Professional Association

But, there is no law requiring Superintendent Neal to aid Plaintiff in concealing those findings. Rather, Federal and Ohio law both operate to ensure these types of findings and accusations are not hidden away from the public. See, e.g., 20 U.S.C. §1232g(b)(6)(B),(C); 34 C.F.R. 99.31(a)(14); 34 C.F.R. 99.39; 65 FR 41852, 41861 (July 6, 2000); see also Title IX of the Education Amendments of 1972, 20 U.S.C. §1681–88; Ohio Rev. Code §121.22 (Open Meetings Act), §149.43 (Public Records Act), 2151.421 (Child Abuse Reporting Statute).

### 3. There is no provision of the Ohio Revised Code that expressly imposes civil liability upon Superintendent Neal.

Plaintiff does not allege that a provision of the Ohio Revised Code expressly imposes civil liability upon Superintendent Neal. That exception, accordingly, does not apply.

### B. Plaintiff—an elected public official—can prove no set of facts entitling him to judgment as to his defamation claim against Superintendent Neal.

### 1. Plaintiff fails to present clear and convincing evidence that Superintendent Neal made, with actual malice, false statements about him.

To establish defamation, the plaintiff must show (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement. Am. Chem. Soc. v. Leadscope, Inc., 133 Ohio St.3d 366, 389 (2012). A plaintiff who qualifies as a **public official**, moreover, may recover for defamation **only if** he produces **clear and convincing evidence** that the defendant acted with **actual malice**. New York Times Co. v. Sullivan, 376 U.S. 254, 279–80 (1964); Gertz, 418 U.S. at 342. Public officials cannot recover in a defamation action absent a showing of actual malice precisely because non-malicious statements, even if false and otherwise defaming, are protected by the First Amendment. Sullivan, 376 U.S. at 279–80.

- 21 -

A defendant acts with "actual malice" where the defendant knew the allegedly defamatory statement was false, or acted "with reckless disregard of whether it was false or not." Id. at 280. "Actual malice may not be inferred from evidence of personal spite[,] ill-will[,] or intention to injure on the part of the [defendant]. Rather, the focus of inquiry is on [the] defendant's attitude toward the truth or falsity of the publication. . . . There must be a showing that false statements were made with a high degree of awareness of their probable falsity. . . [and] sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." List v. Driehaus, 779 F.3d 628, 633–34 (6th Cir. 2015) (quoting Dupler v. Mansfield Journal Co., 64 Ohio St.2d 116, 119 (1980)). In determining whether a plaintiff has met his burden, it is important to consider the totality of the circumstances which led to the publication of the statements. See Scott, 25 Ohio St. 3d 243.

In addition, in a defamation action filed by a public official, the standard a plaintiff must meet to overcome a defendant's properly-supported dispositive motion is more exacting. See Anderson v. Liberty Lobby, 477 U.S. 242, 254–57 (1986). Once a defendant has met its initial burden of showing there is no genuine issue of material fact, a plaintiff can defeat the defendant's motion only by presenting specific, affirmative, concrete facts of sufficient quantum and quality to warrant a reasonable jury in finding that plaintiff has demonstrated actual malice with convincing clarity. Id.

 "Whether the evidence in the record supports a finding of actual malice is a question of law." List, 779 F.3d at 632 (quoting McKimm v. Ohio Elections Comm., 89 Ohio St.3d 139, 147 (2000). "A district court should enter summary judgment in a defendant's favor in a defamation action if it appears that the plaintiff cannot establish any one of the elements of the claim." Bentkowski v. Scene Magazine, 637 F.3d 689, 693 (6th Cir. 2011).

- 22 -

**Here**, Plaintiff has failed to allege **clear and convincing evidence** that Superintendent Neal defamed him with actual malice.  Plaintiff, as a member of the Board, is an elected public official."  See, e.g., Rosenblatt v. Baer, 383 U.S. 75, 85 (1966) ("[T]he 'public official' designation [for defamation purposes] applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs.")  "[S]ociety's interest in the officers of government is not strictly limited to the formal discharge of official duties. . . . The public's interest extends to 'anything which might touch on an official's fitness for office.'" Gertz v. Robert Welch, Inc., 418 U.S. 323, 344–45 (1974) (quoting Garrison v. Louisiana, 379 U.S. 64, 77 (1964)).  Allegations of sexual harassment against a public official "touch on" that official's fitness for office and, accordingly, relate to his official conduct.  See Lee v. City & Cty. of San Francisco, 9th Cir. No. 98-16487, No. 98-16701, 1999 U.S. App. LEXIS 30619, at *4 (Nov. 23, 1999) (addressing sexual harassment allegations against an assistant district attorney in San Francisco County).

The undisputed facts of this case include the following: (1) Ms. Zambori stated Plaintiff sexually harassed and stalked her, (2) Ms. Dickerson stated Plaintiff sexually assaulted her, (3) Muskingum investigated those allegations, held a hearing, and determined Plaintiff was responsible for sexual harassment and non-consensual sexual intercourse, and (4) Muskingum expelled Plaintiff from the university and banned him from campus.  These issues are a matter of public concern in the District because Plaintiff has, at all relevant times, remained a member of the Board.

Ultimately, Plaintiff, as an elected public official, has failed to allege that anything Superintendent Neal has said about this matter is false or, at a minimum, not a protected opinion.

- 23 -

Indeed, Plaintiff does not even articulate what he claims Superintendent Neal said, specifically, to defame him. As such, Plaintiff has not approached the high threshold to show a Superintendent Neal acted with actual malice when making these purported statements.

### 2. Superintendent Neal's statements are true.

Truth is an absolute defense to a defamation claim. <u>Ed Schorey & Sons, Inc. v. Society Nat'l Bank</u>, 75 Ohio St.3d 433 (1996). A statement is not a 'false statement' if, even though it is misleading and fails to disclose all relevant facts, the statement has some truth in it. Moreover, a statement that is subject to different interpretations is not 'false.'" <u>List</u>, 779 F.3d at 633 (quoting <u>Serv. Emp. Int'l Union Dist. 1199 v. Ohio Elections Comm'n</u>, 158 Ohio App.3d 769, 776 (2004)). "It is sufficient [in defending a defamation action] to show that the imputation is substantially true, or as it is often put, to justify the 'gist,' the 'sting,' or the substantial truth of the defamation.". <u>Nat'l Medic. Serv. Corp. v. E.W. Scripps Co.</u>, 61 Ohio App.3d 752, 755 (1989) (quoting Prosser, Law of Torts 798–99 (4th Ed. 1971). Determining whether an allegedly defamatory statement "has some truth" is "subject to different interpretations," such that the "gist" or "sting" of the statement is substantially true, presents a "low threshold." <u>List</u>, 779 F.3d at 633.

In addition, under Ohio law, courts review alleged defamatory statements to determine whether they can apply an innocent construction. <u>Frigo v. UAW Local 549</u>, 5th Dist. No. 04 CA 20, 2005-Ohio-3981, ¶27. Under the "innocent construction" doctrine, if allegedly defamatory words are susceptible to two meanings, one defamatory and one innocent, a court should reject the defamatory meaning and adopt the innocent meaning. <u>Id.</u> (citing <u>Ferreri v. The Plain Dealer Publishing, Co.</u>, 142 Ohio App.3d 629, 642 (2001)); see also <u>Harte-Hanks Communications, Inc. v. Connaughton</u>, 491 U.S. 657, 681, 105 L. Ed. 2d 562, 109 S. Ct. 2678 (1989) ("difference of opinion as to the truth of a matter . . . does not alone constitute clear and convincing evidence" of

- 24 -

actual malice).

**Here**, Superintendent Neal's statements concerning Plaintiff are true. Superintendent Neal has commented on the sexual misconduct accusations and findings against Plaintiff, but his statements in that regard are true. Plaintiff takes issue with *Ms. Zambori's* statement that he sexually harassed and stalked her, but it is still *true* that she made, and continues to support, that statement. Plaintiff takes issue with *Ms. Dickerson's* statement that he sexually assaulted her, but it is still *true* that she made, and continues to support, that statement. Plaintiff takes issue with Muskingum's determination that he was responsible for sexual harassment and non-consensual sexual intercourse, but it is still *true* that Muskingum made that determination.

Indeed, Plaintiff does not base his claims against Superintendent Neal on *what* Superintendent Neal said, he is disgruntled that Superintendent Neal said *anything at all.* Plaintiff, again, appears to contend that Muskingum's determination that he had engaged in sexual misconduct should remain secret from the District and from his constituents. That is why his claims against Superintendent Neal focus on a purported FERPA violation by Muskingum (for which there is no private right of action), rather than articulating what Superintendent Neal purportedly said to defame him.

> **3.    Superintendent Neal's statements are, at a minimum, protected opinions.**

Statements of opinion are a protected form of speech under both the United States and Ohio Constitutions. Bentkowski, 637 F.3d at 693–94; Scott, 25 Ohio St.3d at 244. The United States Supreme Court does not recognize "a wholesale defamation exemption for anything that might be labeled 'opinion,'" but does offer protection to the free exchange of "ideas." Milkovich v. Lorain Journal Co., 497 U.S. 1, 18 (1990). "[U]nder the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not

- 25 -

on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact.'" Gertz, 418 U.S. at 339–40. The United States Constitution, in other words, protects the publication of expressions of pure opinion, whereas opinions based on erroneous facts are actionable if published with actual malice. Jenkins v. KYW, Div. of Group W, Westinghouse Broadcasting & Cable, Inc., 829 F.2d 403, 408 (3d Cir. 1987).

"The Ohio Constitution goes beyond the federal Constitution in that certain false statements of opinion are protected. This protection exists as a separate and independent guarantee ancillary to freedom of expression and requires a reviewing court to determine whether the language in question is fact or opinion." List v. Driehaus, 805 F.Supp.2d 423, 427 (S.D.Ohio 2011) (citing Vail v. The Plain Dealer Publ'g Co., 72 Ohio St.3d 279, 281 (1995)). Under Ohio law, a statement of opinion, no matter how derogatory, unjustified or unreasonable, is not actionable. Frigo, 2005-Ohio-3981, ¶30. To determine whether a statement constitutes protected opinion or actionable fact, courts consider the totality of the circumstances, including factors such as: (1) "the specific language used"; (2) "whether the statement is verifiable"; (3) "the general context of the statement"; and (4) "the broader context in which the statement appeared." See Bentkowski, 637 F.3d at 693–94 (quoting Vail, 72 Ohio St.3d at 282). The totality of the circumstances test is very flexible, and when reviewing all four factors, the weight given any one factor will vary depending on the circumstances of each case. List, 805 F.Supp.2d at 427 (citing Vail, 72 Ohio St.3d at 282). "This analysis is not a bright-line test, but does establish parameters within which each statement or utterance may stand on its own merits rather than be subjected to a mechanistic standard." Id. The privilege afforded to "opinion" is a question of law for the court. Wampler v. Higgins, 93 Ohio St.3d 111, 126–27 (2001).

- 26 -

**Here**, Superintendent Neal's statements, to the extent they are not objectively true, are—at a minimum—protected opinions.  Superintendent Neal has opined that Muskingum's determination that Plaintiff was responsible for sexual misconduct, coupled with Plaintiff's refusal to comment on the situation publicly at Board meetings, has created a "scandal" for the District.  Superintendent Neal has further opined that "In my opinion, It is time [for Plaintiff] to provide the records [concerning his expulsion from Muskingum] or resign from the Board of Education."  Both these statements come well within the protections afforded—under both the United States and Ohio Constitutions—to opinion, especially given these opinions concern an elected public official.  Plaintiff has failed to articulate any other statements made by Superintendent Neal that he contends are defamatory.

### 4.    Qualified privilege protects Superintendent Neal's statements.

If a claimant establishes a *prima facie* case of defamation, a defendant may then invoke a conditional or qualified privilege.  Jackson v. City of Columbus, 117 Ohio St.3d 328, 331 (2008).  A publication is privileged when it is "fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned."  Hahn v. Kotten, 43 Ohio St.2d 237, 243–44 (1975).  "The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only."  Id. at 246.  The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest, and is not restricted within any narrow limits.  Wylie v. Arnold Transp. Servs., 494 F.Supp.2d 717, 731 (S.D. Ohio 2006) (citing A & B-Abell Elevator Co. v. Columbus / Cent. Ohio Bldg. & Constr. Trades Council, 73 Ohio St.3d 1, 8 (1995)).

- 27 -

The Ohio Supreme Court has explained the public policy supporting the qualified privilege, as follows:

> The defense of qualified privilege is deeply rooted in public policy. It applies in a variety of situations **where society's interest in compensating a person for loss of reputation is outweighed by a competing interest that demands protection**. Accordingly, the privilege does not attach to the communication, but to the occasion on which it is made. It does not change the actionable quality of the publication, but heightens the required degree of fault. This affords some latitude for error, thereby promoting the free flow of information on an occasion worthy of protection.

A & B-Abell Elevator Co., 73 Ohio St.3d at 8–9 (emphasis added); see Woods v. Capital Univ., 10th Dist. No. 09AP-166, 2009-Ohio-5672, ¶38 ("Public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication.").

A qualified privilege may be defeated only if a claimant proves with convincing clarity that a publisher acted with actual malice. Jacobs v. Frank, 60 Ohio St.3d 111, syllabus ¶2 (1991). "In a qualified privilege case, 'actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." Id. The phrase "reckless disregard" applies when a publisher of defamatory statements acts with a "high degree of awareness of their probable falsity," Garrison v. La., 379 U.S. 64, 74 (1964), or when the publisher "in fact entertained serious doubts as to the truth of his publication," St. Amant v. Thompson, 390 U.S. 727, 731 (1968). Thus, the lack of an innocent motive on the part of the defendant is insufficient to defeat the privilege. A&B-Abell, 73 Ohio St.3d at 11. Likewise, "the failure to investigate before publishing will not defeat a qualified privilege, unless the defendant entertained serious doubts as to the truth of his statements or the veracity or accuracy of his sources." Id. at 12–13.

- 28 -

Where a statement has some basis in fact, actual malice may not exist.  See <u>Spingola v.</u> <u>Sinclair Media, II, Inc.</u>, 10th Dist. No. 06AP-402, 2006-Ohio-6950; see, e.g., <u>Serv. Emp.</u> <u>Internatl. Union Dist. 1199 v. Ohio Elections Comm.</u>, 158 Ohio App.3d 769, 822 N.E.2d 424 (where a statement is supported by some basis in fact, courts have found insufficient evidence of actual malice even if the statement is ultimately found to be untrue); <u>Flannery v. Ohio Elections</u> <u>Comm.</u>, 156 Ohio App.3d 134, 2004-Ohio-582, 804 N.E.2d 1032 (finding no malice where ultimately incorrect statements were published but the defendant had a factual foundation and an arguably rational basis for making the statements). The determination of whether the privilege applies is a question of law for the court.  <u>Id.</u> at 7.

**Here**, qualified privilege protects Superintendent Neal's statements.  Superintendent Neal has communicated to Board members (including Plaintiff) and certain District administrative personnel concerning Muskingum's determination that Plaintiff was responsible for sexual harassment and non-consensual sexual intercourse, as well as Plaintiff's expulsion/ban from the university.  These communications were made in good faith with the purpose of furthering the District's interests in educating and protecting its students.  See also <u>Ohio Rev. Code §3365.01</u> <u>et seq.</u> (setting forth Ohio's College Credit Plus program, which could allow students to attend Tri-Valley High School and Muskingum University concurrently).

The Board has also shared information concerning the issue with the District's community; this issue, as demonstrated by the letter first informing Board members of Plaintiff's expulsion/ban, is of "grave concern" to the District community and parents.  That concern was further justified when, in early 2018, it was discovered that Plaintiff was Snapchatting inappropriate messages to a female high school student in the District.  Ultimately, Plaintiff's position is unfounded when he suggests that the Board, and Superintendent Neal, should have—

FREUND, FREEZE & ARNOLD
A Legal Professional Association

and were legally required to—assist him in covering up Muskingum's determination that Plaintiff engaged in sexual misconduct.

### B. Superintendent Neal is entitled to judgment on the pleadings as to Plaintiff's "false light" claim.

In Ohio, under a "false light" invasion of privacy theory, "one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (1) the false light in which the other was placed would be highly offensive to a reasonable person, and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Welling v. Weinfeld, 113 Ohio St.3d 464, 473, 866 N.E.2d 1051 (2007). "In order to succeed on this claim, the statement made by the defendant must be untrue." Roth v. Sloan, No.08cv1656, 2011 U.S. Dist. LEXIS 46171, at *23 (N.D. Ohio Apr. 29, 2011).

"Since [a false light] claim is similar to defamation, a plaintiff may pursue both claims in the alternative; however, a plaintiff may not recover under both claims for a single statement." Roth, 2011 U.S. Dist. LEXIS 46171 (citing Welling, 866 N.E.2d at 1058). "[T]he core reasons that necessitated a dismissal of a defamation claim may inform the disposition of a false-light invasion of privacy claim." Waters v. Ohio State Univ., Ct. of Cl. No. 2015-00457, 2016-Ohio-5260, ¶50. This is due in part because "[f]alse-light defendants enjoy protections at least as extensive as defamation defendants." Welling, 113 Ohio St.3d at 471.

**Here**, Plaintiff's false light claim fails for the same reasons his defamation claim fails: (1) Superintendent Neal is entitled to political subdivision employee immunity; (2) Plaintiff cannot meet the high threshold, as an elected public official, to show that Superintendent Neal made any defamatory statements about him with actual malice; (3) Superintendent Neal did not defame Plaintiff because Superintendent Neal's statements are true or, at a minimum, protected

- 30 -

opinion, and (4) qualified privilege protects Superintendent Neal's statements. Furthermore, there is no private right of action under FERPA, and Plaintiff is not entitled to repackage his claim of a purported FERPA violation against Muskingum as a false light claim against Superintendent Neal.

**C.    Superintendent Neal is entitled to judgment on the pleadings as to Plaintiff's "publication of private facts" claim.**

To establish a claim for "publication of private facts," a plaintiff must prove: (1) there has been a public disclosure; (2) the disclosure was of facts concerning the private life of an individual; (3) the matter disclosed would be highly offensive and objectionable to a reasonable person of ordinary sensibilities; (4) the disclosure was intentional; and (5) the matter publicized was not of legitimate concern to the public. Unroe v. Bd. of Edn. Rock Hill Local School Dist., S.D. Ohio No. 1:04-CV-00181, 2006 U.S. Dist. LEXIS 602, at *25–26 (Jan. 4, 2006).

**Here**, Plaintiff's "public disclosure of private facts" claim fails. "[S]ociety's interest in the officers of government is not strictly limited to the formal discharge of official duties. . . . The public's interest extends to 'anything which might touch on an official's fitness for office.'" Gertz, 418 U.S. at 344–45. Allegations of sexual harassment against a public official "touch on" that official's fitness for office and, accordingly, relate to his official conduct. See Lee, 1999 U.S. App. LEXIS 30619, at *4; accord Restatement 2d of Torts, §652D, comment f ("Those who commit crime or are accused of it may not only not seek publicity but may make every possible effort to avoid it, but they are nevertheless persons of public interest, concerning whom the public is entitled to be informed.").

Indeed, it is a matter of public concern when an elected public official is accused of, and found responsible for, misconduct. Specifically, in this case, the Tri-Valley Local School District community has a public concern about Plaintiff being accused of, and found responsible

- 31 -

for, sexual misconduct against two young women.  Plaintiff, in his position as an elected Board member, not only is involved in directing the District students' educations, but—until February 8, 2018, when the Board banned him from the District's property (with the exception of Board meetings) for Snapchatting inappropriate messages to a female high school student in the District—also had in-person access, on the District's property, to its students.  Although Plaintiff calls the Muskingum's determination that he was responsible for sexual misconduct against two young women his "private activities," the law dictates otherwise.

## VI.    CONCLUSION

For the reasons set forth herein, Superintendent Neal requests this Court grant him judgment on the pleadings as to Plaintiff's claims against him.

Respectfully submitted,

*/s/ Bartholomew T. Freeze*
Bartholomew T. Freeze (0086980)
FREUND, FREEZE & ARNOLD
Capitol Square Office Building
65 E. State Street, Suite 800
Columbus, OH  43215-4247
(614) 827-7300; (614) 827-7303 (fax)
bfreeze@ffalaw.com
*Counsel for Defendant, Mark K. Neal*

- 32 -

## <u>CERTIFICATE OF SERVICE</u>

A true and accurate copy of the foregoing was served this 9th day of August 2018, via the

Court's electronic filing system, upon:

Eric J. Rosenberg (0069958)
David T. Ball (0078885)
ROSENBERG & BALL CO. LPA
395 North Pearl Street
Granville, OH 43023
(614) 316-8222; (866) 498-0811 (fax)
erosenberg@rosenbergball.com
dball@rosenbergball.com
*Counsel for Plaintiff, Jason Schaumleffel*

James H. Newberry, Jr. (pro hac vice)
J. Kevin West (0091520)
Nelva J. Smith (0083594)
STEPTOE & JOHNSON PLLC
Huntington Center, Suite 2200
41 South High Street
Columbus, OH 43215
(859) 219-8226; (859) 255-6903 (fax)
jim.newberry@steptoe-johnson.com
kevin.west@steptoe-johnson.com
nelva.smith@steptoe-johnson.com
*Counsel for Muskingum University*

Shawn J. Organ (0042052)
Carrie M. Lymanstall (0084393)
Joshua M. Feasel (0090291)
ORGAN COLE LLP
1330 Dublin Road
Columbus, OH 43215
(614) 481-0900; (614) 481-0904 (fax)
sjorgan@organcole.com
cmlymanstall@organcole.com
jmfeasel@organcole.com
*Counsel for Macey Zambori*

Aneca E. Lasley (0072366)
Eleanor M. Hagan (0091852)
Emily K. Mikes (0095756)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
(614) 365-2700; (614) 365-2499 (fax)
aneca.lasley@squirepb.com
eleanor.hagan@squirepb.com
emily.mikes@squirepb.com
*Counsel for Mackenzie Dickerson*

*/s/ Bartholomew T. Freeze*
Bartholomew T. Freeze