# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JASON SCHAUMLEFFEL,

        Plaintiff,

      v.

MUSKINGUM UNIVERSITY, et al.,
        Defendants.

Civil Action 2:17-cv-463
Judge George C. Smith
Magistrate Judge Jolson

## OPINION & ORDER

This matter is before the Court on Plaintiff's Motion to Quash Subpoena Duces Tecum. (Doc. 81). For the reasons that follow, that Motion is **DENIED**.

## I. BACKGROUND

The Court, elsewhere, has provided a detailed review of the allegations in this case. (*See, e.g.*, Doc. 43). Briefly, Plaintiff Jason Schaumleffel attended Muskingum University ("Muskingum") before being expelled for allegations of sexual misconduct. (Doc. 1, ¶ 3). Plaintiff also served on the Board of Education for Tri-Valley Local Schools (the "Local School Board") but alleges that he was "forced" to resign after board members became aware of the allegations against him. (*Id*., ¶ 5). On May 29, 2017, following his expulsion and board resignation, Plaintiff sued Muskingum; the superintendent of the Local School Board, Mark Neal;[1] Macey Zambori, a current Muskingum student; Mackenzie Dickerson, a former Muskingum student; and five unnamed Defendants ("Does 1–5"). (*Id*., ¶¶ 19–20). Muskingum was later dismissed as a Defendant in this lawsuit. (Doc. 77).

---
[1] Mark Neal filed a Motion for Judgment on the Pleadings that is pending. (Doc. 59).

Relevant here, Plaintiff's claims for defamation and intentional infliction of emotional distress remain pending against Ms. Zambori and Ms. Dickerson. (Doc. 1 at 71–89). The Court dismissed Plaintiff's claims for negligent infliction of emotional distress on March 6, 2018. (Doc. 43). Plaintiff seeks money damages against Ms. Zambori and Ms. Dickerson, alleging that they "made false allegations of sexual misconduct" against Plaintiff after each engaging in "consensual sexual activity" with him. (Doc. 1, ¶¶ 1, 2).

In turn, Ms. Zambori and Ms. Dickerson brought counterclaims against Plaintiff. (Docs. 45, 46). Ms. Zambori alleges abuse of process and intentional infliction of emotional distress, (Doc. 45); and Ms. Dickerson alleges, among other things, battery/sexual assault, false imprisonment, and intentional infliction of emotional distress. (Doc. 46 at 65–70). Relevant here, Ms. Zambori asserts that Plaintiff filed this lawsuit in an effort to embarrass her and pressure her to withdraw her claims against him. (*See*, *e.g.*, Doc. 45 at 2–3).

Discovery regarding Plaintiff's claims and Ms. Zambori's and Ms. Dickerson's counterclaims is underway. As part of her case, Ms. Zambori subpoenaed Muskingum on May 3, 2019. Roughly two weeks later, Plaintiff filed the instant Motion to Quash. (Doc. 81). Muskingum has not objected to the subpoena but rather has stated its intent to comply. (*See* Doc. 82 (requesting only that the Court stay Muskingum's response to the subpoena pending resolution of the Motion to Quash, explaining that it "is presenting no further argument for or against its response to the subpoena and will leave the ruling in the Court's discretion.")). The Motion to Quash is fully briefed and ripe for resolution. (*See* Docs. 81, 87, 89, 90).[2]

## II.  STANDARD OF REVIEW

---

[2] Ms. Dickerson also filed a response in opposition to Plaintiff's Motion, noting her intent to issue a similar subpoena. (Doc. 89).

Rule 45 of the Federal Rules of Civil Procedure governs subpoenas and provides that the court must, upon motion, quash or modify a subpoena if it fails to allow a reasonable time to comply, requires a nonparty to travel more than 100 miles, requires disclosure of privileged or protected material, or subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A).

When a subpoena is directed at a nonparty, like the one here, the court must first decide whether the party moving to quash the subpoena has standing. Generally, a party has no standing to quash a subpoena directed at a nonparty, but an exception exists where the party seeking to quash claims a "personal right or privilege with regard to the documents sought." *Waite, Schneider, Bayless & Chesley Co. L.P.A. v. Davis*, No. 1:11-cv-0851, 2013 WL 146362, at *5 (S.D. Ohio Jan. 14, 2013). (quotation marks and citation omitted). But a mere claim of personal right or privilege does not automatically confer standing. Indeed, "[t]he party seeking to quash a subpoena bears a heavy burden of proof." *Ajuba Int'l, LLC v. Saharia*, No. 1:11-CV-12936, 2014 WL 4793846, at *2 (E.D. Mich. Sept. 25, 2014). To meet that heavy burden, the movant must make more than "conclusory" assertions of an interest or privilege. *See Hamm v. Cunningham*, No. 1:12CV124, 2012 WL 13027079, at *1 (N.D. Ohio May 16, 2012) (finding that "conclusory" assertions of confidentiality failed to satisfy heavy burden of proof). Without standing, a party may not challenge the subpoena on any ground, including undue burden or relevance. *See Riding Films, Inc. v. John Does 129–193*, No. 2:13-CV-46, 2013 WL 3322221, at *6 (S.D. Ohio July 1, 2013) (collecting cases).

### III.  DISCUSSION

The basis for Ms. Zambori's subpoena is a document titled, "Response to Official Report," that Plaintiff filed as an exhibit to his Complaint. (Doc. 1-37). In this document, Plaintiff alleges that he was physically assaulted by two individuals associated with Muskingum—Jessica Edge, a

Muskingum student-activities director, as well as a Muskingum professor. (Doc. 81-1 at 12). He explains that, following the allegations of sexual misconduct against him, he contacted Ms. Edge, whom he once considered a "trusted advisor." (Doc. 1-37 at 12). However, according to Plaintiff's account, the relationship between the two soured following a confrontation in December 2016. (*Id.*). This confrontation, according to Plaintiff, is why he did not tell investigators about his conversation with Ms. Edge:

> During the hearing Stacey (Jess's boss) asked me why I didn't tell the investigators about my conversation with Jess, I brought up how I didn't feel like she would be truthful because of, 'the situation that has occurred in December.' Stacey quickly dropped the issue knowing what that referred to. On Thursday December 8th 2016 there was an incident involving Jess Edge and myself [that] caused me many issues. Every Thursday night during the semester Student Senate (whom I was President of) would have a campus organization host 'Brewed Awakenings' this is an event from 9–11 pm. However, this was the last brewed of the semester so Senate was hosting it . . . When I showed up that Thursday the 8th of December, Jess was in a really bad mood and normally when she is like that, students know just to simply leave her alone and let her calm down. However, she kept barking orders at me to take the trash out and wash dishes (which is not my job, we have 5 paid students who get paid to do it) and since I was in my suit I told her I'd prefer to not do that. It was common on nights that I did make it from school board for me to not help clean up . . .
>
> However this night I was standing talking to my friend Dane at around 11 and Jess comes up very upset, asking why I am not helping clean up and I said it was because I had my suit on and was getting ready to leave. She grabbed my arm and started yelling at me about disrespectful I was being making her boyfriend sweep up when I was standing around talking to a friend. Normally something like this would bother someone, but I had an incident two years prior where a professor had physically grabbed me, shoved me against a wall and yelled at me and have really bad anxiety when people grab and yell at me. Jess was the only staff member on campus that had helped me through the process assaulting me and I spent a semester in counseling over it and she knew I had really bad memories with being grabbed and yelled at. I immediately left and went home, crying to my mom that night about what had happened. I told no one else until I decided to ask Susan about what to do, because since that had occurred Jess wouldn't even talk to me, which made my job as student body president 10 times harder, not being able to communicate with my advisor. . . . Since that point, Jess wouldn't speak to me, she wasn't available to ever meet and would ignore me whenever I was trying to talk to her . . . That is why when the investigators asked me about if I had talked to any staff members about it I said that I hadn't. After I was expelled, Jess made a comment to my sister

that, 'sometimes innocent people are found guilty.' This just confirms my suspicion and concerns that Jess would lie to get me in trouble. She also made a comment to our executive vice president (Luke Lloyd), on Thursday January 26th that she knew I was never capable of what I was being accused of, yet Valerie had told me no one us up [sic] in Student Life was told, how would Jess know what I was accused of?

(Doc. 1-37 at 11–12).

Ms. Zambori's subpoena requests that Muskingum produce the following:

1. all documents relating to any allegations made by Plaintiff that Jessica Edge hit, shoved, struck, grabbed, or assaulted him in or around December 2016, including your investigation into such allegations;

2. all documents relating to any allegations made by Plaintiff that Professor Pollock hit, shoved, struck, grabbed, or assaulted him, including your investigation into such allegations;

3. all documents relating to any allegations made by Plaintiff that any Muskingum personnel hit, shoved, struck, grabbed, or assaulted him, including your investigation into such allegation.

(Doc. 81-1 at 12).

Plaintiff has moved to quash the subpoena on two grounds. He argues that the information sought is irrelevant and protected and thus undiscoverable under the Family Educational Rights and Privacy Act ("FERPA"). (*See generally* Doc. 81 at 2–3).

### A. Relevance/Undue Burden

The Court considers Plaintiff's relevance argument first. Although not entirely clear, Plaintiff seems to be asserting that the subpoena is unduly burdensome because the information sought is irrelevant to Ms. Zambori's counterclaims. (Doc. 81 at 2–3). For instance, he asserts that "[t]here is no conceivable likelihood" that the information sought by the subpoena will lead to the discovery of information relevant to Ms. Zambori's counterclaims. (*Id*. at 3).

But this is not Plaintiff's argument to make. The law is clear that only Muskingum, the entity responding to the subpoena, has standing to argue undue burden or relevance. *See S. Fifth Towers, LLC v. Aspen Ins. UK, Ltd.*, No. 3:15-CV-151-CRS, 2016 WL 11200224, at *3 (W.D. Ky. Jan. 13, 2016) (explaining that nonparty was "entirely capable . . . to make such arguments by way of his own motion to quash"); *Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 76.190.140.193*, No. 1:15 CV 1342, 2015 WL 6758219, at *2 (N.D. Ohio Nov. 5, 2015) (holding the same); *Griffiths v. Ohio Farmers Ins. Co.*, No. 1:09-CV-1011, 2010 WL 2639918, at *2 (N.D. Ohio June 29, 2010) (holding the same); *Hackmann v. Auto Owners Ins. Co.*, No. CIV.A. 2:05-CV-876, 2009 WL 330314, at *2 (S.D. Ohio Feb. 6, 2009) (finding that "whether or not [plaintiff's relevance arguments] are well-founded, [p]laintiff has no standing to move to quash" subpoena against nonparty).

Muskingum has not opposed the subpoena as unduly burdensome. To the contrary, Muskingum has indicated its intent to comply with the subpoena and stands ready to do so. (*See* Doc. 82). Accordingly, Plaintiff's Motion to Quash on the basis of undue burden or relevance fails.

### B. FERPA

Plaintiff's more promising argument is that he has standing to challenge the subpoena because "it seeks private information about him during his time as a Muskingum student." (Doc. 81 at 2). As explained, there is an exception to the general rule that a party has no standing to quash a nonparty subpoena where the movant claims a personal right or privilege over the documents sought. *See Waite, Schneider, Bayless & Chesley Co. L.P.A.*, 2013 WL 146362, at *5. Yet Plaintiff has failed to show that this exception applies here.

6

To start, the Undersigned finds that Plaintiff has not satisfied his burden of establishing that the "privilege/interest" exception applies. Plaintiff's Motion provides:

> As for the basis of Plaintiff's challenge, the information sought is entirely protected information about him as a student at Muskingum. Subpoenas that seek protected information must be quashed. Fed. R. Civ. Proc. 45(d)(3)(A)(iii). This information is protected against disclosure without his consent by the Family Educational Rights and Privacy Act.

(Doc. 81 at 2). That explanation is too thin. A party moving to quash a subpoena must rely on more than "conclusory assertions" of confidentiality or privilege. *See Hamm*, 2012 WL 13027079, at *1. In *Hamm*, the plaintiff moved to quash multiple subpoenas directed at nonparty companies, alleging that the subpoenas were overbroad and unduly burdensome and that they sought "irrelevant" and "personal" information. *Id*. The court held that the plaintiff, relying on only "conclusory" assertions of confidentiality, had not carried "his heavy burden." *Id*. (quotation marks omitted). Instead, the plaintiff's argument went "to the relevance of the records sought and not the privileged nature of his records or his personal right not to have them produced." *Id*. Consequently, the court dismissed the plaintiff's motions for lack of standing. *Id*.

Similarly, here, Plaintiff's threadbare claim that the information is "protected" falls short. From the Court's perspective, the heart of Plaintiff's argument is relevance—an argument he may not make. And, like the plaintiff in *Hamm*, Plaintiff makes conclusory assertions of confidentiality but fails to adequately support these assertions. As a result, Plaintiff has failed to meet his heavy burden. *See id*.; *see also Nucorp, Inc. v. Does*, No. 2:11-CV-15222, 2012 WL 12961115, at *5–6 (E.D. Mich. Oct. 18, 2012) (holding that "[d]efendants' argument that the information sought is confidential does not give them standing to object, as confidentiality does not equate to privilege") (quotation marks and citation omitted); *Hackmann*, 2009 WL 330314, at *2 (rejecting plaintiff's

7

"bald statements" of privilege because the fact "[t]hat papers are personal, or even confidential, is not in itself grounds for quashing a subpoena").

Moreover, to the extent that Plaintiff is arguing that FERPA gives him standing under the interest/privilege exception, the law is clear that FERPA does not, by itself, block the production of student records sought in discovery.

Interestingly, in his Reply, Plaintiff concedes that FERPA does not always block the production of student records sought for discovery purposes. (*See* Doc. 90 at 4). Case law says the same. While FERPA protects against the improper disclosure of educational records or personally identifiable information, FERPA "does not . . . prevent discovery of relevant school records under the Federal Rules of Civil Procedure." *Jackson v. Willoughby Eastlake Sch. Dist.*, No. 1:16CV3100, 2018 WL 1468666, at *2–4 (N.D. Ohio Mar. 23, 2018) (quotation marks and citation omitted). Said plainly, "records that are considered protected under a statute are not necessarily privileged for discovery purposes," and FERPA does not create such a right. *Id.* (collecting cases). Accordingly, Plaintiff may not rely on FERPA alone to quash the subpoena. *See, e.g.*, *Smith v. Sw. Licking Sch. Dist. Bd. of Educ.*, No. 209CV778, 2010 WL 3910487, at *2–3 (S.D. Ohio Oct. 1, 2010) (rejecting argument that FERPA precluded compliance with subpoena, explaining that FERPA, "by its own terms, does not create an evidentiary privilege").

Finally, The Court is satisfied that the parties' stipulated protective order adequately addresses Plaintiff's concern regarding the improper disclosure of confidential educational records. (*See* Doc. 79). Indeed, FERPA itself "contains an express exception" allowing for the disclosure of educational records in compliance with a judicial order or pursuant to any lawfully issued subpoena. *See Doe v. Rutherford Cty., Tenn.*, No. 3:13-0328, 2014 WL 1630983, at *2 (M.D. Tenn. Apr. 24, 2014) (citing 20 U.S.C. § 1232(g)(b) (2)(B)); *see also Smith*, 2010 WL

3910487, at *2–3 (ordering compliance with subpoena and noting that the parties' agreed protective order "adequately addresses any confidentiality concerns relating to [the student records at issue]").

The parties, in their agreed protective order, expressly acknowledge that this case "[i]nvolve[s] the exchange of sensitive information," including information that may be covered by FERPA. (Doc. 79 at 1). It states, "[i]n order to permit discovery, the parties stipulate and agree to, and the Court finds good cause for, entry of a Protective Order and Order for Release of discoverable materials otherwise protected by FERPA or other law pursuant to Federal Rule of Civil Procedure 26(c)." (*Id*. at 1). Plaintiff, in his Reply, does not explain why the established protocol is not enough. Rather, he circles back to his relevance argument, which does him no good. (*See* Doc. 90 at 4).

In sum, FERPA does not prohibit the production of student records for discovery purposes in this case where the parties have thoughtfully planned for the disclosure of such records.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Quash (Doc. 81) is **DENIED**.

IT IS SO ORDERED.

Date: July 15, 2019 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE